1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          EASTERN DISTRICT OF WASHINGTON
10

11
12    STEPHEN WOHL,                    )    No. CV-0800278 CBM
                                       )
13              Plaintiff,             )
                                       )    ORDER:
14    v.                               )      (1) GRANTING DEFENDANT'S
                                       )          MOTION FOR SUMMARY
15    MICHAEL ASTRUE, Commissioner     )          JUDGMENT; AND
      of Social Security              )      (2) DENYING PLAINTIFF'S
16                                     )          MOTION FOR SUMMARY
                Defendant.            )          JUDGMENT
17    _____)

18
19

20          The matters before the Court are Plaintiff Steven C. Wohl's and Defendant

21    Commissioner of Social Security Michael Astrue's Cross-Motions for Summary

22    Judgment.[1]  The Court concludes that the Administrative Law Judge's finding that

23    Plaintiff is not entitled to Social Security Disability and Social Security Disability

24    Insurance Benefits is supported by substantial evidence and free from material

25    legal error.  Therefore, for the reasons set forth below, the Court **GRANTS**

26

27    ───────────────────
      [1] This case was transferred from the United States District Court of the Eastern District of Washington to the
28    Honorable Consuelo B. Marshall, Senior District Court Judge for the Central District of California, by designation
      of the United States Court of Appeals for the Ninth Circuit.

                                        1

Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment and **ENTERS JUDGMENT** in favor of Defendant.

### SUMMARY OF PROCEEDINGS

This case arises out of the denial of Plaintiff Stephen C. Wohl's (hereinafter, "Plaintiff") Application for Social Security Disability and Disability Benefits. On September 10, 2008, Plaintiff filed a complaint seeking judicial review of the denial of benefits by the Commissioner of Social Security pursuant to the Social Security Act. This case was reassigned to this Court for all purposes on November 20, 2008. [Docket No. 9.] On February 10, 2009, Plaintiff filed a Motion for Summary Judgment. [Docket No. 13.] Defendant responded to Plaintiff's arguments and separately moved for Summary Judgment on March 20, 2009. [Docket No. 15.]

### SUMMARY OF ADMINISTRATIVE RECORD

**I.    Summary Of The Proceedings**

Plaintiff alleges disability and applied for Social Security Disability and Disability Insurance Benefits on July 28, 2006. (Record at pp. 49-51.)

Plaintiff's Application was denied on October 10, 2006, and his request for reconsideration of his Application was denied on November 29, 2006. (*Id.* at pp. 56-60.) An administrative hearing was held on July 31, 2007, before the Honorable Richard A. Say, Administrative Law Judge (hereinafter, the "ALJ").

In an Order dated October 9, 2007, the ALJ found that Plaintiff was not disabled pursuant to Sections 216(i) and 223(d) of the Social Security Act[2] and denied Plaintiff's Application. (*Id.* at p. 17.) The Appeals Council declined review and Plaintiff sought judicial review in this Court. (*Id.* at p. 18.)

---

[2] Both Sections 216(i) and 223(d) of the Social Security Act, codified at 42 U.S.C. § 416(i) and 42 U.S.C. § 423(d) provide in relevant part: "the term "disability" means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . ."

1

## II.   Summary Of The Evidence

Plaintiff is a 57 year old male who is 6'2'' tall and weighs 290 lbs. (Record at pp. 22-24.) Plaintiff completed two years of college. (*Id.* at pp. 22-23.) He resides in Eastern Washington with his wife. (*Id.*) From 1989 until May 12, 2006, Plaintiff was employed as an "auto service manager" for an automotive garage. (*Id.* at p. 91.)

An auto service manager is a management position with mostly administrative and some clerical job functions. (*See id.* at pp. 36, 40.) The job of auto service manager is "described as sedentary" and includes tasks such as coordinating staff and personnel, reviewing and submitting proposals to vendors, procurement, purchasing, and directing auto repair and maintenance. (*See id.*)

Although Plaintiff's job title was "auto service manager", the record shows that Plaintiff performed duties in addition to those typically performed by those with this title. Plaintiff predominantly acted as an auto service manager but at times *also* performed duties generally performed by, attributed to, and listed under the job description of a garage supervisor. (*See id.*) The duties of a garage supervisor are not sedentary. A garage supervisor is usually on his feet, on the garage floor, overseeing repairs and the daily functioning of the automotive garage.

Plaintiff alleges that he became disabled on May 12, 2006, when he terminated from this job (hereinafter, "the disabling event"). Plaintiff has not been employed since the alleged disabling event. (*Id.* at p. 24.) Plaintiff alleges that because he cannot stand on his feet and he cannot perform clerical work, he cannot perform his past job and he therefore is disabled and entitled to Social Security Disability and Social Security Disability Insurance Benefits.

### A.   Plaintiff's Testimony of Injury/Disability

In support of his Application for Disability and Disability Insurance

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Benefits, Plaintiff testified to the following physical impairments at the Hearing: retinal detachment[3] in both eyes for which he underwent operations in 1999 and 2000, left shoulder impingement limiting movement in his left shoulder, arthritis in his knees and diabetes.  (Record at pp. 24, 25, 28, 29, 31, 41, 42.)

Plaintiff testified that because of these impairments, he cannot walk for more than three blocks without resting.  He also testified that after walks, his legs "swell" and turn "red."  Plaintiff stated sitting is uncomfortable; he can only sit for about thirty minutes before his legs ache and get stiff and he needs to stand and stretch often.  (*Id.* at pp. 29, 31, 41, 42.)  According to Plaintiff, he can stand for twenty minutes at a time  for a total of about two hours a day, but he will "pay the price" and will likely be "[im]mobile the next day."  (*Id.* at pp. 26, 29, 31.)

Plaintiff reported that he needs to "brace" himself to bend, he cannot "come off the floor without assistance", he must hold onto something to rise from a seated position, he avoids climbing stairs, and he does not kneel.  (*Id.* at pp. 26, 29-30, 32.)  He further testified that although he can raise his arms over his head, he cannot lift or carry items over 40 lbs.  (*Id.* at p. 27.)

As a result of Plaintiff's retinal detachments, he alleges he does not have peripheral vision, does not jog, and does not drive at night.  Moreover, Plaintiff testified at the Hearing that the burning and discomfort in his eyes cause him to rinse his eyes every 15-20 minutes when reading.  (*Id.* pp. 25, 28, 31, 42.)

At the Hearing, Plaintiff described a typical day as waking up at around six in the morning, watching television, reading a little, feeding and cleaning his pets, and doing light housework such as the dishes and vacuuming.  (*Id.* at pp. 27-28.)

### B.    The Medical Evidence

The ALJ received the following medical evidence supporting and refuting

---

[3] Retinal detachment is an eye disorder in which the retina peels away from its underlying layer of support tissue. Initial detachment may be localized, but without rapid treatment the entire retina may detach, leading to vision loss and blindness.

Plaintiff's claim of disability:

- *1999 & 2000* - Plaintiff underwent operation for rhegmatogenous retinal detachments. (Record at pp. 162-167)

- *2002-2006* - Plaintiff was treated by a Doctor of Osteopathy for his vision. (*Id.* at pp. 131-134.)

- *December 6, 2005* - Daniel Ostrander, M.D., Plaintiff's primary care physician, noted that Plaintiff's detached retinas were "stable at present." (*Id.* at p. 135.)

- *June 1, 2006* - Plaintiff visited Dr. Ostrander at which time he noted, "Currently doing well . . . no complaints or problems." (*Id.* at p. 168.)

- *September 28, 2006* - Robert J. Rose, M.D., examined Plaintiff and found that Plaintiff was obese and had stable bilateral detached retinas. Dr. Rose observed that Plaintiff had a normal walking gait and used neither a cane nor an assistive device. Dr. Rose concluded that Plaintiff could walk for one mile without resting. (*Id.* at pp. 146-151.) An MRI of Plaintiff's knees showed no significant arthritis. (*Id.* at p. 151.)

- *December 6, 2006* - Dr. Ostrander observed tenderness in Plaintiff's knees and occasional discomfort at the maximum range of motion in his left shoulder. (*Id.* at p. 168.)

- *January, 2007* – An orthopedic doctor, Douglas C. Norquist, examined Plaintiff and concluded that Plaintiff had knee pain and impingement syndrome. (*Id.* at pp. 180-181.) Dr. Norquist noted that Plaintiff should "continue with the intermittent use of anti-inflammatory medication and Aleve . . . and some good quad rehab . . . . The next suggestion would be to inject both knees but I do not think he is to that stage yet." (*Id.* at p. 181.)

- *February, 2007* - Dr. Ostrander examined Plaintiff and noted: "This patient has done well in the past year and has no major medical issues." Plaintiff's knees, left shoulder and retinas were all stable. (*Id.* at pp. 168-171.)
- *June 15, 2007* - After reviewing Plaintiff's medical history over the preceding 15 years, Dr. Ostrander wrote a letter stating that Plaintiff had "bilateral knee arthritis and visual incapacities following his detached retinal surgeries" and the chronic illnesses of diabetes mellitus and hypercholesterolemia. (*Id.* at p. 178.) Dr. Ostrander opined that Plaintiff was/is capable of light work. (*Id.*)

C. Vocational Expert Testimony

An impartial vocational expert, Fred Cutler, testified at the Hearing regarding Plaintiff's present ability to do his past job duties.

Mr. Cutler testified that although Plaintiff's previous job title was "auto service manager", at times he acted as and performed the job duties of a garage supervisor. In this regard, Plaintiff's job was a "composite" of the mostly sedentary position of auto service manager and the mostly non-sedentary position of garage supervisor. (Record at pp. 36, 40.)

When asked by the ALJ whether, given Plaintiff's mobility limitations, what kind of work Plaintiff could perform, Mr. Cutler responded that Plaintiff could perform sedentary work. (*Id.* at pp. 35-36.) The ALJ then asked whether given Plaintiff's mobility limitations, he could perform *just his past auto service manager position duties* as that job is typically seen and described in the national economy (i.e., without garage supervisor job duties) to which Mr. Cutler responded "Yes." (*Id.* at p. 36.) Mr. Cutler opined that Plaintiff *should* be able to perform his past auto service manager duties as that position is generally described and performed in the national economy because that position is sedentary.

Mr. Cutler did, however, testify that Plaintiff's alleged eye condition and

his need to rinse his eyes every 15-20 minutes while reading could prevent him doing sedentary work. Generally opining about what jobs in the national economy Plaintiff could do as opposed to explicitly discussing Plaintiff's ability to do his past auto service manager job duties, Mr. Cutler opined that "sedentary work is going to be either clerical or its going to be you know some type of function [sic] where sight, sustained sight is going to be required." (*Id.* at p. 37.)  According to Mr. Cutler, Plaintiff's eyesight would be a "major issue" because "typically people working at sedentary jobs need only be able to concentrate and read. And if you can only do that for 15 to 20 minutes" it could be a "major barrier to being able to productively work." (*Id.* at pp. 36-37.)  Mr. Cutler did identify certain jobs such as cashiering, ticket selling, factory and agricultural work that are sedentary and do not require a lot of reading. (*Id.* at pp. 37-38.)

## III.    Summary Of The Administrative Law Judge's Decision

The ALJ considered all the evidence, including Plaintiff's own testimony, and concluded that the weight of the medical evidence did not support Plaintiff's allegation of disability.[4]  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Record at p. 15.)  Critical to the ALJ's findings was the fact that there was no evidence that Plaintiff ever complained to his doctors of burning and discomfort in his eyes or of the need to rinse his eyes. Also critical to the ALJ's finding was that the medical records show that Plaintiff did not complain about pain in his knee or shoulder until six months *after* the

---

[4] The ALJ considered the following evidence, pursuant to 10 CFR § 404.1529(c), in assessing the credibility of Plaintiff's statements regarding the intensity of his injuries and symptoms: (1) Plaintiff's daily activities; (2) the location, duration and frequency and intensity of Plaintiff's pain or symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication that claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. (Record at p. 17.)

alleged disabling event, and even then the medical records show that these conditions were "stable." (*Id.* at p. 16.) Furthermore, the ALJ afforded "significant weight" to Dr. Ostrander's opinion that Plaintiff can perform "light work" because he has been treating Plaintiff for fifteen years. (*Id.*)

Accordingly, because the ALJ found: (1) "the claimant has the residual capacity to perform sedentary work except that claimant would need to avoid all crouching, crawling, kneeling and vibration and could only occasionally climb stairs, use foot pedals and reach overhead with the left upper extremity" and (2) Plaintiff is capable of returning to his past relevant work an auto service manager as generally performed, the ALJ denied Plaintiff's Application. (*Id.* at pp. 13, 17.) Plaintiff disputes both these findings on Appeal.

## PLAINTIFF'S CONTENTIONS

Plaintiff argues the ALJ erred by finding that he Plaintiff can perform his past sedentary auto service manager job. Specifically, Plaintiff contends the ALJ erred by:

(1)    making an adverse credibility finding against Plaintiff without identifying which specific portions of Plaintiff's testimony he found not credible and the reasons why; and

(2)    not accepting vocational expert Fred Cutler's testimony that a person who needs to rinse his eyes every 15-20 minutes is not a productive worker as sufficient to shift the burden to Defendant to prove that there are other jobs in the national economy that Plaintiff could perform accordingly.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court's jurisdiction is limited to reviewing the ALJ's decision to determine if: (1) the ALJ's findings are supported by substantial evidence; and (2) are free from material legal error. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . ."); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (court will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accepts as adequate to support a conclusion." *Tommasetti*, 533 F.3d at 1038 (internal citations omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." *Id.*

Therefore, an ALJ's findings should be upheld if they are supported by reasonably drawn inferences. *Id.* When the evidence can reasonably support either affirming of reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *See Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n10 (9th Cir. 1978).

## DISCUSSION

This Court has jurisdiction of this Appeal pursuant to 42 U.S.C. § 405(g), which authorizes district court review of a final decision by the Commissioner of Social Security following a hearing in which the plaintiff was a party.

### I.     Establishing Disability Under The Social Security Act

A person is "disabled" for the purpose of receiving social security benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i); 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has established a five step sequential evaluation for determining whether a person is disabled. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant as to the first four steps. If the fifth step is

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

reached, the burden shifts to the Commissioner to prove that work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g); § 20 C.F.R. § 404.1560(c). If, at any of the steps, the claimant is "not disabled," the analysis ends and the claimant is not entitled to disability insurance benefits. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

First, it is determined whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. *See* 20 C.F.R. § 404.1520(b); 20 C.F.R. § 404.1572(a); 20 C.F.R. § 404.1572(b); 20 C.F.R. § 404.1574; 20 C.F.R. § 404.1575. Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability. This finding is not in dispute.

Second, it is determined whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p and 96-4p. Here, the ALJ's finding that Plaintiff's obesity, bilateral knee arthritis, bilateral detached retinas, and left shoulder impingements are severe impairments is not in dispute.

Third, if the claimant has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments" in the federal regulations. If the impairment meets or equals a "listed impairment," the claimant is conclusively presumed to be disabled. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526. If the claimant's impairments neither meet nor equal the list of impairments, the analysis must continue to step four. Here, the ALJ's finding that Plaintiff's impairments was not on the list of impairments is not in dispute and was not dispositive.

Fourth, if the impairment does not meet or equal a "listed impairment," the

court then determines the claimant's residual functional capacity and whether the claimant's impairment prevent him from performing his past relevant work. If the claimant can perform his past relevant work, benefits are denied. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1520(f).

With respect to step four, the ALJ found that Plaintiff has the residual functional capacity to perform his past relevant auto service manager function because "[a]lthough [Plaintiff] is unable to perform sports or other strenuous activities, his activities of daily living are conducive to at least sedentary work." (Record at p. 15.) The parties dispute this finding.

Lastly, if the claimant cannot perform past relevant work, the burden shifts to the Commissioner to show that the claimant is able to perform other kinds of work and the prevalence of those jobs in the national economy. The claimant is entitled to benefits only if he is unable to perform this "other work." 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Here, because the ALJ found that Plaintiff has the residual functional capacity to perform his past relevant work, the ALJ did not consider the fifth step. The parties dispute whether the ALJ should have considered the prevalence of jobs Plaintiff can perform in the national economy.

## A.  The ALJ Provided Clear And Convincing Reasons For Discrediting Plaintiff's Testimony Of Injury And Pain

The ALJ evaluates a claimant's symptom testimony under a two-step analysis. First, the claimant must "produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

Once the claimant produces this evidence, the medical findings need not support the severity of the symptoms, and the ALJ must provide clear and convincing reasons and make specific findings to support a conclusion that a plaintiff is not credible. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007)

("the ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.") Thus where the ALJ has articulated his reasons for doing so, this Court should not disturb an ALJ's adverse credibility finding. *See id.* ("generally, questions of credibility and resolution of conflicts in the testimony are the functions solely for the" ALJ.).

Several types of evidence may undermine the complainant's claims of disability. The claimant's lack of self-reporting to his physicians about the extent of his alleged symptoms is a clear and convincing reason to find the claimant not to be credible. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (Commissioner properly rejected plaintiff's testimony in part because she never reported the alleged restriction to a physician). Similarly, testimony about the claimant's activities may provide a basis for finding him not to be credible. The Ninth Circuit reasoned that "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job", the ALJ may conclude that the claimant's pain does not prevent him from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Cmm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Here, the ALJ rejected Plaintiff's testimony regarding the intensity, persistence and limiting effects of his symptoms as "not entirely credible." (Record at p. 15.) In support of his adverse credibility finding, the ALJ pointed to medical evidence that contradicted Plaintiff's claims of injury, Plaintiff's own testimony regarding his daily activities, and the absence of evidence in the record of Plaintiff's complaints to his doctors about his eyes.[5]

---

[5] Specifically, the ALJ found Plaintiff not to be credible for the following reasons: (1) Plaintiff had comprehensive physicals with Dr. Ostrander six months before and three weeks after the alleged disabling event and "expressed no

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court finds that the in light of the medical evidence, the ALJ was entitled to reject Plaintiff's testimony and specifically and convincingly justified his reasons for doing so. *See Parra*, 481 F.3d at 750. Accordingly, the ALJ's adverse credibility finding of Plaintiff's testimony is supported by substantial evidence and the ALJ did not commit reversible error.

B.    The ALJ Could Not Consider Other Jobs In The National Economy Because Plaintiff Did Not Meet His Burden of Proving An Inability To Perform His Past Relevant Work

Unless a claimant proves that he cannot perform his past relevant work, he is not disabled and the ALJ shall not consider other jobs the claimant can perform. Here, the ALJ declined to proceed to step five because he found that Plaintiff can perform his past relevant work as an auto service manager, as that job is typically described and performed in the national economy.

To determine whether a claimant has the residual capacity to perform his past relevant work, the ALJ must ascertain the demands of the claimant's former work and then compare those demands to his present capacity. 20 C.F.R. § 404.1520(e). With respect to the former work, the claimant must prove he is unable to return to his former *type* of work – not just his *actual* former job. *See Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986); *see also Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); SSR 82-61 (ALJ may find claimant is capable of performing work either as it is generally performed in the national economy or

---

specific complaints or problems and reported he was" doing well" (Record at p. 15.); (2) in December, 2006, almost six months after the disabling event, Plaintiff "presented to Dr. Ostrander with pain complaints in the left shoulder and bilateral knee pain", but Dr. Ostrander's examination noted that Plaintiff had tenderness in his joint lines and a full range of motion in his shoulders (*Id.*); (3) nine months after the allegedly disabling event, Plaintiff was again examined by Dr. Ostrander who reported that Plaintiff's shoulder, knees and retinas were stable (*Id.* at p. 16); (4) in January, 2007, Plaintiff was examined by Dr. Norquist and informed Dr. Norquist that 'his shoulder pain was gone" (*Id.*); (5) there was no evidence in the medical record to substantiate Plaintiff's statement that his retina condition limits him to lifting 40lbs of weight (*Id.*); (6) there is no evidence in the medical record to support Plaintiff's alleged limitations relative to sitting, standing or walking or severe fatigue requiring rest (*Id.*); (7) Plaintiff's testimony that he watches television, reads, does household chores such as vacuuming, dishwashing, and mowing the lawn, and can walk three blocks without resting undermines his claims of excess pain and immobility (*Id.* at pp. 14-16); and, lastly, (8) there "is no evidence in the record to support [Plaintiff's] need to rinse his eyes every 15 minutes." (*Id.* at p. 16.)

1

2

as plaintiff performed it).

The ALJ's finding that Plaintiff has the residual functional capacity to be an

3

auto service manager as that job is generally performed was supported by the law.

4

*See id.* Here, Plaintiff argued that because he cannot perform the garage

5

supervisor work that he used to do, he does not have the residual functional

6

capacity to do his past relevant work. The ALJ disagreed, finding that the point of

7

comparison for determining Plaintiff's past relevant work is not what actually

8

Plaintiff *did* but how Plaintiff's job is generally described in the national

9

economy. Thus, the fact that Plaintiff sometimes performed garage supervisor

10

duties when he was technically employed as an auto service manager and his

11

present physical limitations prevent him doing those garage supervisor functions,

12

does not mean he cannot work solely as an auto service manager. The fact that

13

Plaintiff did perform garage supervisor duties from time to time is irrelevant for

14

determining whether he can work in the future as an auto service manager for

15

another employer. (*See* Record at pp. 15-17.)

16

Moreover, the ALJ's finding was also supported by substantial evidence.

17

The Ninth Circuit and 20 C.F.R. § 404.1566(e) and 20 C.F.R. § 416.966(e)

18

empower the ALJ to use vocational experts as sources of occupational evidence of

19

a complainant's residual functional capacity. *See Pinto*, 249 F.3d at 844; *see also*

20

*Valentine v. Cmm'r Soc. Sec.*, 08-3574 (9th Cir. July 24, 2009) (ALJ properly

21

relied on the vocational expert's responses to the hypothetical which reflected the

22

complainant's residual capacity). Here, the ALJ relied on both the testimony of

23

the impartial vocational expert Fred Cutler that a person with Plaintiff's

24

impairments could perform sedentary jobs and the medical record to conclude that

25

Plaintiff has the residual functional capacity to do his past sedentary work of an

26

auto service manager. (Record at p. 17.)

27

A hypothetical propounded to a vocational expert must be based on medical

28

assumptions that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Here, the ALJ presented Mr. Cutler with a hypothetical containing assumptions supported by the medical record[6] and asked him if the garage supervisor functions were "separated out" from Plaintiff's old job, would Plaintiff be have capacity to the do his old job. Mr. Cutler responded that Plaintiff could; despite his mobility limitations, Plaintiff could do the sedentary, managerial work of an auto service manager as that job is typically performed. (Record at pp. 36, 40.) Therefore, substantial evidence supported the ALJ's finding that Plaintiff has the residual functional capacity to do his past relevant work.

Having determined at step four that Plaintiff's impairments do not prevent him from performing auto service manager functions, the ALJ could not, as a matter of law, engage in the step five analysis. Accordingly, Plaintiff's contention that the ALJ failed to consider at step five evidence of the availability of sedentary jobs Plaintiff can perform that would not aggravate his eye condition is not reversible error.

## CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence and is free from material legal error. Accordingly, the Court **GRANTS**

//

//

//

---

[6] The ALJ's hypothetical contained assumptions regarding only Plaintiff's mobility impairments. The ALJ's hypothetical did not have to ask Mr. Cutler to consider whether a person with Plaintiff's mobility impairments *and* need to rinse his eyes every fifteen to twenty minutes when reading could perform sedentary work because the ALJ found Plaintiff's testimony about the burning and irritation in his eyes to be not credible and lacking in evidentiary support.

Defendant's Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment and hereby **ORDERS** that judgment be entered in favor of Defendant.

IT IS SO ORDERED.


DATED:   August _11_ , 2009          By_____
                                            CONSUELO B. MARSHALL
                                            UNITED STATES DISTRICT JUDGE